Good morning, Your Honor. I'm Eugene Galland, and I appear this morning on behalf of the appellant Revelstoke Investment Corporation. Revelstoke is a holding company for Texas real estate that is now beneficially owned by the heirs of the late Jose Campos. Campos was a prominent Filipino industrialist. He died about a year ago, and the appellants in this case strongly deny that there's any interest at all by the Marcos family in any of those properties. The case focuses on Texas litigation that was begun in April 2005 when the plaintiff class in the Hilao litigation registered the judgment of the Hawaii District Court in Texas under 28 U.S.C. 1963. They shortly followed that up with an execution against the Revelstoke property under Rule 69A. In 2006, we notified, counsel for appellants notified, the other side, Robert Swift, their counsel, their lead counsel in Texas, of our intention to file a motion based on Hawaii Statute 657-5, which provides in terms that judgments that are over 10 years old are presumed to have been satisfied after 10 years unless they are extended by the plaintiffs who've received the judgment. There are two reasons why we informed opposing counsel of this. The first, there's a meet and confer obligation in Texas. And the second is we thought, and we still believe, that the Hawaii Supreme Court decision in international savings and loan versus WIG is absolutely dispositive of the issues in this case. Mr. Hillen, may I ask you a question that probably will strike you as very odd? And it may very well simply be an odd question, but it troubles me. Once you filed a motion to dismiss in the Texas, in the Northern District of Texas, then Halal comes into court here and asks Judge Reel to extend the judgment out of an abundance of caution. There had been no ruling on the substance of the motion to dismiss, I take it, by the district judge in Texas. That's correct. So on the record as it exists, we do not know what that judge would have thought of your argument. We don't know whether the judge would have looked to Hawaii for anything or not. We don't know whether the judge would have looked to the Texas statute, the borrowing statute, or whether he would have looked to some entirely different line of authority in Texas with respect to enforceable registration, timely registration, and enforcement of the judgment. So why isn't all of this, in effect, a simple request for an advisory opinion by Judge Reel and in turn by this court about all sorts of things that no court may ever have to wrestle with on the West Coast? Because I think, Your Honor, first of all, Texas law is clear, and the Texas Code provision is 16.066, action on a foreign judgment. And it says, enforcement of a foreign judgment is barred in this state if the action is barred under the laws of the jurisdiction where rendered. So a judgment registered in Texas under 1963 requires the Texas court to look to Hawaii. Still, there's been no decision to that effect. Well, the reason there's been no decision, Your Honor, is because the plaintiffs argued in Texas that the Texas court shouldn't decide the issue and they should abide the result in Hawaii in the Ninth Circuit. Why should we help out a judge who I'm sure is extremely able, who can do his own work? I would be pleased to have the Texas… Why should we be his law clerks? I'd be pleased to have the Texas court to decide it, Your Honor. And we tried to have the Texas court decide, and unbeknownst to us, the motion to extend was filed here. And we were only informed of it by a telephone call after the time to respond had passed. But let me ask you this. Isn't the real question, because since you raised this motion to dismiss before this effort to extend the judgment happened, isn't the real question whether on February 3rd, 2005, where under your theory the judgment would have lapsed, whether in fact it lapsed or not? And that's not an issue that Judge Rial passed on. So isn't that the only question really before the Texas District Court? Does Judge Rial's actions have any effect on that issue? Well, as I say, the Texas court has said that it's waiting for the Ninth Circuit to decide the issue of extension because it accepted the arguments of the plaintiffs that the Texas court should not decide it because it's already been decided by Judge Rial. I agree. I think the Hawaii statute and the decision in Whig is absolutely clear because the court there said at 921 P. 2nd. 121 in 1996, quote, we hold that under Hawaii revised statute 657-5, the judgment together with all the rights and remedies appurtenant to it are conclusively presumed, paid and discharged after 10 years and less timely renewed. Well, let me ask you this. If Hillel had gone into Judge Rial and gotten a precautionary extension of the judgment, then taken its judgment to Dallas, registered it and then filed its enforcement action, would we be here? If they had done it? No. The answer is no, I think, because then you would have fought all this out in the Northern District of Texas, right? You would have made the same motion, no doubt. You would have said, look, they can't revive a dead duck. And the Northern District of Texas at that point would have decided whether the judgment was alive or had died and been revived, right? That's correct. So what's the real difference? Well, I understand what the real difference is. The problem we face is that, as I say, the Texas court, by reason of comity or whatever, has ruled, and the ruling is in the record, that it's not going to decide that issue. In the meantime, we've spent hundreds of thousands of dollars. What do you think it would do if we said we're not either? Well, if this court said that it were not deciding the issue, then I think that would open the gate to the Texas court to address the issue. And I'd be pleased to have that issue addressed on the merits anywhere. We've been blocked thus far from being able to litigate that issue on the merits. Under the law of the Fifth Circuit, would the district court in Texas be required to defer to a district court sitting in Hawaii on the grounds that the district court sitting in Hawaii has a better understanding of Hawaii law? What would the Texas district court have to do on that? I'm not aware, not to say that there is not such a rule, but I'm not aware of a rule that would say that the court in Texas would have to abide the result by a Texas district court. I think as a matter of comity and as a matter of practice in the federal district courts, it's most frequent that a court will defer its ruling if the same issue is pending elsewhere, and particularly if the same issue is pending as it was here before the same judge who had decided and entered the first judgment in 1995 and who is still presiding over the case in Hawaii. But if we could have the merits of that issue addressed promptly before there is any further expense, as I say, there's been hundreds of thousands of dollars in litigation expenses in the last two years. There's been depositions in Hong Kong, depositions in Canada. There are more depositions scheduled. There are great difficulties because the records are 20 years old. Other issues that have been raised by the plaintiffs here, let me turn to those. They've raised three issues essentially about the merits of our argument in this case. In no case, however, I think it bears mentioning, have they even cited the Hawaii Supreme Court case, International Savings and Loan v. Whig. There's no serious issue that Hawaii state law does govern here. The Hawaii Carpenters Trust Fund decision by this court in 1987 made clear that even in a federal cause of action, the state statute of limitations applies even though the state statute of limitations in Hawaii refers to judgments rendered by courts of this state. So there's no question, I think, under the rules of precedence of this circuit, under the broad principle of North Star Steel Company v. Thomas, and even under the 28J letter case that was just submitted last week, Andrews v. Roadway Express. Second, there was no basis here for the district court to extend the time deadline for good cause or for any other reason. The district court said that the difficulty of finding assets that fraudulent concealment justified an out-of-time extension of the judgment. Let me ask you a question on that. If Judge Reel, in addition to or alternative to extending the judgment, ruled it didn't, it hadn't expired. I'm sorry, had? The enforceability of the judgment started to run from the time when our mandate was issued. Would the Texas district court have any obligation to follow that gratuitous expression of view by Judge Reel, or would it follow its own apparent rule, or the rule in the Fifth Circuit as indicated in Andrews, that the time starts to run from when the mandate issues? Excuse me, I got myself confused. Would the Fifth Circuit follow its own rule, or would it follow the Ninth Circuit rule? That's not a Fifth Circuit rule, Your Honor. If you look at Andrews, and you look at the decision in Homeport Rentals, there are a lot of states that have laws that say that a judgment becomes final only after the time for appeal has run, or after the resolution of an appeal. Hawaii doesn't have that kind of rule. I understand. The question, though, is would the Texas court apply its own view, or would it be obliged to follow the view expressed by a court in the circuit? I think it would be obliged to follow the courts of Hawaii, because the question here would be, under the provision of the Texas statute I read before, whether the judgment is enforceable under the laws of Hawaii. But here the Hawaii Supreme Court is silent on the precise issue. The Hawaii what? The Hawaii courts have not spoken on the precise issue of when the tenure time starts running. And so the question is, we would just be guessing, if we addressed the issue, when that time started running. And so the Texas district court could say, well, the Fifth Circuit can guess just as well, or we can guess just as well. Why would they be bound by our guessing of where Hawaii is going on that interpretation? Well, they wouldn't be bound. If they were deciding the issue in the first instance, I agree with you. Let me point out, though, that not only is it a situation where Hawaii doesn't have a statute that's common among the states that dates the final judgment from an appeal, but as a matter of federal practice in this case, the judgment that was registered was the district court judgment. It was not the judgment of the court of appeals. And under 28 U.S.C. Section 1963, they could have registered the judgment of the court of appeals. 28 U.S.C. Section 1963 says you can register the judgment of the district court or, if you prefer, the court of appeals. And they registered the district court judgment. And we've also addressed all the other reasons why that district court judgment was final, enforceable, and, in fact, enforced from and after the time it was entered more than 10 years before the registration in Texas. Extending the judgment in any event is, I don't think, a guess. Once again, the decision in Whig makes absolutely clear that there's an absolute right on the part of the plaintiff to get an extension of the judgment if it wishes for any reason after 10 years. But if you don't, as a matter of law, the judgment is conclusively presumed satisfied 10 years after its entry. There's hardly a clearer, more dispositive rule of law or statement of a rule of law than the statement of the Hawaii Supreme Court there. One other point on the so-called fraudulent concealment issue that I draw the court's attention to is this. Not only, once again, has Whig ruled against tolling of 687-5 for any reason, but plaintiffs in this case have admitted that there could not be any fraudulent concealment. If you look at tab 1 to their brief, which is supplemental excerpts of record, pages 1 through 3, it's a declaration by Antonio Rosales, who's a member of the plaintiff class, who's a lawyer, and who testifies in that declaration that he and others, as a government official, knew about a lawsuit that was filed against Mr. Campos in Texas in 1986 concerning the same properties. And that lawsuit, the government of Philippines brought that lawsuit, and it was settled and dropped. So as a matter of clear admission here, there couldn't be any issue of fraudulent concealment. I'll reserve my remaining time for rebuttal. Certainly. And I. Good morning, Your Honors. John Van Dyke for the class of human rights victims represented by Selsa Hilao. There are two issues raised by this appeal. First, whether Revelstoke has a right to intervene. And second, if so, whether the extension was proper as the district judge entered into it. And my harebrained question. Yes, and whether the court should hear this case at all. I think to some extent that goes to the intervention question. Perhaps I could start there, although. Well, not really. I mean, if you start with intervention, then it seems to me you've really got a problem. I mean, Judge Reel no more ruled on that motion appropriately than anything. I mean, he ruled on the merits first. Then he considered the intervention request. He didn't consider any of the 24A or B factors. And the reasons that he gave aren't really germane to the criteria for Rule 24A and B. So, you know, it would be very easy for an appellate court looking at the record to say, well, wait a minute. Let's just send this thing back for the district court to do it correctly and see what happens. Well, with respect, Judge Reimer, the district judge ruled that the Revelstoke had no significantly protectable interest. Oh, really? Where? Where? Well, in the oral argument, which is attached. I mean, he didn't say that. Now, you can argue that perhaps saying nothing I can do here would affect what happens in Texas is an implicit statement that there's not a sufficient protectable interest. Your Honor, it's a rough-hewn way of saying it, perhaps. But he's saying that you have no interest here. Your interest is in Texas. And that's exactly correct because under this court's decision in the Al-Asal Water Corporation case, in the Tahoe Regional Planning Agency case, in the Ministry of Defense versus Cubic Defense System case, the court repeatedly says that an intervener must have a stake in the action that is being litigated. Well, of course, there's a great deal of irony here. But your position in Texas was, hold on, don't rule on the motion because we're going to seek and get a dispositive ruling in the District of Hawaii. So if that's true, Revelstoke's motion has been, in effect, hijacked to Hawaii, so that the forum has simply been transferred for deciding whether the judgment that you sought to register and then to enforce was timely registered while the judgment was alive. Right? So they certainly had a right to contest that in Texas. And if the forum got transferred to Hawaii, why wouldn't they have a commensurate right to protect their interest? Well, as Mr. Galland has explained, the class of human rights victims registered the claim in Texas in April of 2005. It's not until over a year later that they then seek to intervene in Hawaii with regard to an extension of the judgment. In other words, it had been registered. Well, they filed a motion to dismiss on the footing that the judgment was dead when it was registered in Texas. Right? Then you come into Hawaii and say to Judge Reel, we think our judgment is alive for a whole lot of reasons. But just out of an abundance of caution, we want you to extend it and, by the way, make a whole lot of other rulings about the viability of the judgment. And then we're going to take that ruling back to the Northern District of Texas, presumably to tell the judge in Texas, look, we've got a definitive ruling. Our judgment is alive, always was. But anyway, even if it weren't, it's now been extended. Well, this isn't as unusual as you're making it sound. It's commonplace for litigation in one place to have an effect in litigation in another place, but that doesn't allow the litigants in the second place to intervene in the first case. And this court has been very clear on that issue. What's a case that's close? Well, Alice L. Waters. Oh, yes, but Alice L. is a case in which a distant creditor wants to intervene in an unrelated lawsuit in order to protect the collectability of assets that he got a judgment for in a completely different case. And we said, no, no, no, no, that's way too remote to let you come in and mess up an unrelated lawsuit. And besides, we have set up a separate procedure in this separate lawsuit for dealing with creditors situated like you are. I mean, that really is a very different situation from where you've got a specific request to stay a motion to freeze out the opportunity for the opposition to speak, unless they're allowed to intervene in the motion's disposition in a different court, isn't it? With respect, I don't believe so, because the language in Alice L. Waters is that regardless of the phase of litigation at which an interest arises, that interest must be related to the underlying subject matter of the litigation. Well, in MDL 840, the underlying subject matter was torture, murder, disappearances of thousands of Filipinos at the hands of the Marcos regime. And Revelstoke is not in any way interested in those underlying issues. This proceeding doesn't have anything to do with the underlying litigation. It's over and done with. That's correct, Your Honor. All right. This was a completely separate ancillary proceeding that you initiated in response to a litigation position taken by Revelstoke in Texas litigation that you initiated. So it's an ancillary. It isn't – there's nothing – whether there was a human rights violation is long since settled. This is a question of whether your judgment was timely, whether when it was registered it was alive. That's correct. And we're, as you clearly understand, are trying to collect on the underlying judgment. And we've been trying for this for many years. And we've been diligent and certainly not dilatory in any way and have pursued opportunities whenever they arise. And it was certainly our understanding that the judgment was very much alive. But as you said, out of an excess of caution, we did seek to have it formally extended, and the district judge did so. But the Texas case is a different case. The Texas case is one where we are seeking as judgment creditors to persuade the court that the land that Revelstoke and six other corporations own in their name is part of the Marcos estate, that it was established by a Marcos crony, and that the corporate shells should be pierced in order to have it be clear that this is Marcos money that the victim should have access to. And that's our goal. And they're seeking to intervene in the underlying case, and we think that's improper. We think Donnelly v. Glickman also supports our position where you had women seeking to make claims based on hostile work environment. Men came in from the Forest Service. Let me ask you this. I've been trying to figure out, you know, as a district judge in Texas what the district judge would likely do. So there's a motion to dismiss based upon interpretation of an order entered by a district judge in a different part of the country. I would suppose that in the normal event it would be pretty reasonable to suppose that upon request to stay, the district judge, in this case the Northern District of Texas, would say, sure, I'll stay my hand until the judge who issued the judgment or the order has a shot at it. If that had happened in exactly that order, would it be your position that your opponent in the Texas litigation would have nothing to do with the proceeding in front of district judge number one? Yes, we think that the Texas case is isolated. So your position is that the law supports the notion that if you go into the court in Texas and say, Judge, they're asking you to interpret an order issued by the judge in Hawaii. Please stay your hand. District judge in Texas wants rid of the thing anyway, happy to say, I'm happy to stay my hand. Is it your position then that you could go by yourself, ex-party in effect, to Hawaii, the rendering court, without the involvement of the party in the Texas litigation, and get a ruling that the Texas court has stayed its hand waiting for, ex-party, and bring it back and hope to have it have effect? Well, your Honor's earlier question was, is the Texas judge bound by it? And perhaps it would be appropriate to turn to the question of what the Texas judge would look at in determining whether the judgment from Hawaii was still valid. And we've submitted just recently the case of Andrews v. Roadway Express, a Fifth Circuit case that was handed down after the briefing was completed in this case, which is a very instructive opinion because it looks at Texas law, and it says that under Texas law, which also has a 10-year tolling statute for judgments, under the Texas statute, the interpretation is that the time limit for enforcement began to run when the Supreme Court denied review of the judgment. Of course, that was an internal Texas case, I think. I read it awfully fast this morning. Yes, and I apologize for getting it late. I think that was an internal Texas case. It wasn't a question of someone trying to enforce a judgment that had been rendered in an out-of-state federal district court. Yes, and they're looking at Texas law, and the opinion doesn't give the Texas law, but I'd like to, if I could, just give the court the Texas law because it's very instructive here. This is Section 34.001A of the Texas Civil Practice and Remedies Code, and it's entitled No Execution on Dormant Judgment. And the text of it is, If a writ of execution is not issued within 10 years after the rendition of a judgment of a court of record or a justice court, the judgment is dormant, and execution may not be issued on the judgment unless it's revived. Now, the significant thing here is the word rendition because that's similar to the word in the Hawaii statute, which is rendering, or rendered, rather, after the judgment is rendered. So the Texas court, in looking at that word rendition, is saying that, well, something is rendered when the appellate process is completed. But aren't they relying on a state Texas, a Texas state opinion, which speaks a lot more clearly than we have here in Hawaii? Absolutely, and as Judge Okuda explained, there is no Hawaii, there is no definitive Hawaii statute. The Whig case that Mr. Galland relies upon doesn't address the question that we're struggling with here. But we do have a Texas court that interprets a Texas statute that's virtually the same as the Hawaii statute and says that the logical interpretation is to say that the matter is rendered when the appellate process is completed. And obviously, that's the only possible, logical, sensible solution to this situation. Now, have you done a survey of these sorts of statutes and how states do we have, like, who comes out which way or any batting average on that? We have, Your Honor, and we found no case, none whatsoever, that says that the tolling process begins before the appellate process is completed. And it would be absurd to reach that result. The language in 28 U.S.C. 1863 is instructive because that language very clearly refers to when the judgment has become final by appeal or expiration of the time for appeal. So the federal statute, the closest federal statute, gives us that ruling. We've discussed Borer v. Chapman, the 1887 case, which is very clear. Appellate proceedings, as you know, can take many years. In Borer, it was a six-and-a-half-year process. And so the court said, of course, the statute begins when the process is completed. Calderon v. U.S. District Court, Al Arby v. INS, these are recent Ninth Circuit decisions. In federal court, a judgment does not become final following appeal until the case is returned to district court and the mandate is spread. Homeport is very clear on that. And so we are very confident that that's the only possible result. But I'd also like to emphasize the Ducek v. Jacoby case, which I think gives us our roadmap that we need here. Because in Ducek v. Jacoby, 1981 decision of this court, the argument was made that the state statute eliminated the ability of the judgment creditor to pursue the judgment. Well, that's because the state statute provided a venue in a specific state court. And we said, well, of course, that's nuts. State statute providing for venue in a state court can't trump federal subject matter jurisdiction. Right. Absolutely. It's a totally different animal from a state statute of limitations, which plainly applies to a whole raft of federal claims. Well, I'm having trouble applying state statutes of limitations, particularly on enforcement of judgments where the Supreme Court and everybody else has said it's a procedural matter. Yes, but what the Revelstoke is seeking here is to eliminate the judgment of the human rights victims by relying on the state statute. Correctly or incorrectly, it's seeking to apply the limitations period of the state for enforcing judgments. Yes, but this is a case based on a federal statute, based on a federal question of law. Federal law has governed throughout. And Ducek versus Jacobi says, well, federal courts have to be able to bring their judgments to completion because that's what the autonomy of the federal system requires. So we were wrong in Marks and we were wrong in Manacusca and the Fifth Circuit's wrong in Homeport and Andrews. And Justice Blackburn was wrong in Sanford. Well, all those cases. In applying state, state, state limitations period. Well, all those cases, Your Honor, support our position because in all of those cases, the judgment was allowed to continue. But that's the bottom line we're talking here about whose law applies. The result doesn't drive legal decisions, at least it shouldn't. Well, in Ducek versus Jacobi, the court said Rule 69A must be read in light of Rule 82. And Rule 82 says you don't rely on state law if it eliminates. So in other words, we were wrong in Marks. Justice Kennedy was wrong in Marks. We were wrong in Manacusca. Blackman was wrong in Sanford. They were right because they found a way of allowing the case to go forward. Well, no, we're talking about. There wasn't a consistent. I'm not trying to find a way to do anything. OK, I don't regard that as being my job. I am trying very hard to understand what the appropriate neutral legal principle is that's going to affect the outcome. Well, the language in Ducek is that state court procedures must not be elevated to the status of substantive, substantive abridgments on the federal district court's jurisdiction to enforce its judgments. And that, I think, is the bottom line. So Judge Real said something to the effect that federal court judgments never expire. Is that your position? That seems to be the the ruling in Ducek versus Jacoby, that the court has to have a continuing opportunity to bring its victors to get their judgment. Now, there may be latches and estoppel issues that come in, but certainly none of those would apply in the present case because the class of human rights victims have been diligent. And in all respects, I've run out of time. But if there are any further questions, I'd be happy to answer them. OK. Thank you, Mr. Van Dyke. Thank you very much, Your Honor. Mr. Gillen. Let me first briefly address the issue of whether the appeal extends the that are told the judgment of the district court. I'm sorry. Could you just repeat that? Yes. Let me start. The question whether whether the tenure limitation runs from the time of an appeal or from the time of the original entry and cases cited by Mr. Van Dyke are all the opposite. And for different reasons, the Boer versus Chapman case, like many of the cases they cite, was a case that had been reversed on appeal, sent back. And the judgment after the reversal and sending back to the district court is the final judgment. They said in a number of cases of appellate court judgments. And when are they final? And if you look at the Bianchi case, the Calderon case and the third, the L. The Al Harbi case, which they all cite, it makes clear in the Al Harbi case, which discusses all three cases, that that's the finality of a court of appeals judgment, not the finality of a district court judgment. Let me just conclude by commenting on intervention. The Donnelly versus Glickman case, I think, is instructive, as it was cited by Mr. Van Dyke. And it's instructive for this reason, because the court says, I think we had a right to intervene as a right. The court says there that the significant protectable interest is where a party asserts an interest that's protected under some law. And our interest is protected under the law. There's a relationship between its legally protected interest in the plaintiff's claims. There is. And the third thing that that case does is it says you've got to look at the analysis at the time that the intervention is sought. Now, I have no doubt that if we tried to intervene at the time of the actual litigation of the human rights issues, we didn't have a significant protectable interest. But at this stage of the case, we surely have a significant protectable interest. And they don't even address the two other grounds to intervene here, permissive and under many of this court's cases, such as United States versus Imperial Valley Irrigation District, the right to intervene at the time a judgment has been entered for the purpose of seeking an appeal. Now, I have no doubt that this court has broad grounds for not deciding the issues that we have presented here. But we think that under this court's decisions, it surely has the power to rule on the merits here. And we would urge the court to do so because in our view, the Hawaii statute is very, very clear. There's been a two-year detour that's been caused by the other side, and we shouldn't be punished for that detour. Thank you. Thank you, counsel, Mr. Van Dyke. Thank you, Mr. Hilton, for the matter just argued, and it will be submitted.
judges: Goodwin, Rymer, Ikuta